(Court of Common Pleas of Lucas County.)

EDWARD A. HANNER v. THE MAUMEE BREWING COMPANY et al.

OSCAR SCHULTZE v. THE MAUMEE BREWING COMPANY et al.

---

*Settlement of insolvent corporation—Exceptions to report to referee—Claims of employes—*

(1.) Employe, by excepting to report of referee allowing his claim as a general creditor, can not, without motion for new trial before the referee or bill of exceptions, raise the question as to his right to priority under the statute, for services performed before the appointment of receiver.

(2.) Such employe might, however, be allowed to come in as party to action brought to enforce stockholders, and there litigate his right of priority.

(3.) When so made parties, the following claims allowed priority under the statute: (*a*) Amount due bookkeeper; (*b*) balance due traveling salesmen.

(4.) But the superintendent who acts for the principal, having supervision and control of an important branch of its business with power to hire and discharge employes, is not entitled to preference under the statute.

---

PRATT, J:

Here are two motions, which necessarily will be considered together. Motion No. 93, in case No. 42540, Hanner v. The Maumee Brewing Co., being a motion to make certain people —Bott and others—parties; and Motion No. 264, in case 42541, Oscar Schultze v. The Maumee Brewing Cc., exceptions to Referee's Report.

These motions were argued together, and the questions as to the ultimate rights of the parties were discussed —although perhaps not necessarily involved in the motions, but for the purpose of getting at the whole matter at once and not having to go over the ground at different times. I have found it not a light task to go through the two cases with their multitudinous papers and the various orders that have been made, for the purpose of finding out where the matter stands and what ought to be done with it. The complication results largely from the fact that there are two cases here in reference to really the same subject matter. Why they were not brought in one action I do not know—except it may have been thought it would simplify the matter to dispose first of the tangible property of the corporation, real and personal; and, in the second place, after that was done, to determine the question as to the stock liability. At any rate the two cases have gone along and they are interdepenent, and it is impossible that the question of the ultimate liability of the stockholders should be determined until the whole matter is disposed of as to the tangible property— the whole must be disposed of before either case can be said to be fully and finally determined.

It was urged on the hearing in the Hanner case—in which it was sought to dispose of the tangible property and determine the liens upon it—that it had been so far disposed of that it would be an idle ceremony to bring in now these parties who come here claiming to have rights as employes in this company superior to the rights of general creditors. The motion is by John Bott, F. W. Bailey, John P. Bott and John Pringle, who ask to be made parties to this suit for the purpose of setting up their several claims for work and labor performed in behalf of said defendant, The Maumee Brewing Company, within three

months prior to the appointment of the receiver herein, and also for the purpose of moving the court for an order upon said receiver to pay such claims in accordance with the statute in such cases made and provided." That is in the Hanner case, and this is signed by Mr. Bassett, attorney for these parties in that case.

The other motion is in the Schultze case, and is:

"Now comes John Bott, F. W. Bailey, John P. Bott and John Pringle and except to the report of the referee, Clayton W. Everett, heretofore filed in this cause, for the reason that said report fails to correctly state the nature of the respective claims of said persons, in that it classifies their respective claims among those of the general creditors of said defendant corporation when they should be stated to be claims of said persons named for work and labor performed in behalf of said corporation, The Maumee Brewing Company; and for the further reason that said referee refused to grant said persons, upon their application before the signing or filing of said referee's report, an opportunity to produce proof that they were employes of said corporation and entitled to a preference under the statutes of Ohio, as well as proof of the nature and extent of their respective claims. And said persons hereinbefore named ask leave of the court to so make offer of proof relating to the nature and amount of their respective claims as employes against said corporation."

This case has been referred to Mr. Everett, as a Referee, under Sec. 5210 and following, and not referred to him as Master Commissioner, and this is important. Sec. 5213 provided the manner for conducting a trial before a referee: "The trial by referees shall be conducted in the same manner as a trial by the court", &c., and then it says "their report upon the whole issue shall stand as the decisions of the court, and judgment may be entered thereon in the same manner as if the action had been tried by the court; when the reference is to report the facts, the report shall have the effect of a special verdict" &c.

This case was heard before this referee, and the referee reports here—a very lengthy report and among other things, he reports as to the indebtedness, and under the head of "unsecured indebtedness" reports the amounts now claimed by these parties; and this is objected to. But, no motion for a new trial appears to have been made before the referee and no bill of exceptions was taken. This special verdict stands here, and whatever is found in that special verdict forms the basis of the judgment, and the judgment must follow the findings of fact unless set aside.

Among the Entries made in the haste and rush in which they are made, there was, on one Monday morning during this term an entry made upon the motion docket "Report of Referee confirmed, by consent". However, that has not been journalized, and I find, filed last week only, a motion to set it aside.

Mr. Wilson: I enquired this morning, and was informed that it had been journalized.

The Court: It was not so noted the other day on the motion docket, or on the appearance docket, and if it has been journalized since, I am not aware of it; but it is in the same term, and, of course, can be righted even if it has been journalized. If it had been beyond the term, I would have hesitated whether it did not bind everybody—all creditors. These two actions were commenced upon the same day, the 7th of March, 1898. The first case was commenced originally and simply for the appointment of a receiver to run the business; but he soon found that he couldn't do so profitably, and so reported. Thereupon in that case all the lien holders were made parties to this Hanner suit, and among them was Schultze, who commenced the suit in behalf of all creditors for the purpose of recovering against the stockholders on their subscriptions and also their statutory liability. This, of course, made Schultze a trustee of the creditors, or representative of them, and all the credit-

ors were in substance parties to that suit; but there were nevertheless as parties to that suit, persons claiming to have specific liens—that is, liens over and above, or in opposition to, we may say, the general creditors, and they went on to determine these liens, and there have been numerous decrees and orders taken, which I do not need to consider. Under this view of the case, the two Botts—one a bookkeeper and one a superintendent of the brewing department, and Pringle, who was a travelling man of the concern, were claiming adversely to the rights of the general creditors, and therefore were claiming adversely to the trustee, Schultze, and it was perfectly proper, and you may say necessary, for them to protect themselves in opposition to the general creditors that they should be parties to that suit, and they should have been. They stood by, however, until the present time—on the 3d September, I think—at any rate after this report was made, they came in and asked to be made parties. Although they have slept upon their rights, still the cases are not fully disposed of and I am disposed to allow them to come in as parties to the suit, if they desire to do so—although I am of the opinion that the real case for them to go into is the Schultze case which was brought for the benefit of the creditors and the funds to be realized there are a part of the assets for the creditors as well as the tangible property, and therefore I think they should be made parties, and I don't know but it is necessary for them to be made parties in the Schultze case in order that there may be such a judicial determination of the rights of these claimants as shall be subject to review hereafter in other courts.

So far as the exceptions to the referee's report are concerned, they are not in shape, in my judgment, to raise the questions here so that I could determine and so that there could be any relief if I determined them wrong, and when this court is not in a position to determine a case so that it can be reviewed in a higher court, it is not a judicial determination of the case, but only the opinion of the particular judge. That motion to hear these exceptions will therefore be overruled.

The motion to make parties to the Hanner suit may be granted, but whether it will do the parties any particular good, I will not undertake to determine. If a motion were made by these parties to be made parties to the Schultze case, I see no reason why such motion might not and should not be granted.

This brings me to the matter which was really discussed and upon which authorities and extensive briefs have been furnished me—as to the rights of these employes. If it was manifest that these claims could not be sustained, of course we might refuse the application to make them parties, but there are two decisions in this state, by different circuits in the state, in direct conflict upon the question involved here, to a certain extent, at least. I have been furnished with a host of references to cases outside of Ohio, and all I can say about them is, the more a person looks at them the greater is his confusion. There is no harmony, and it would be folly for this court or any court to undertake to derive from the general decisions throughout the United States, upon the numerous statutes, in different shapes, any rule upon the subject, of the question here is as to these different claims.

The first claim in its order and the largest in amount, is the claim of John Bott, who was the Superintendent of the brewing department of this manufactory, and his duties are prescribed in a copy of the contract between him and the Brewing Company which is submitted—and to which counsel for the opposition to his claim say they do not dispute as to the facts—wherein it is recited that "Said second party is to have, as superintendent, the entire charge of the manufactured product of the said first party and supervision of the preparation and filling of its packages, and it shall be his duty to employ and he shall have the right to discharge the men engaged in the manufacture of the product of the brewery, subject to

the approval of the general manager". His claim is based upon that, and he was to receive a salary of $3000 per year, and he asks for a balance due him for the last three months. Another party making a claim is John P. Bott, who was a book-keeper, and the affidavit is furnished here as to what his duties were; that he was in the employ of the Maumee Brewing Company from October 31, 1897, until the appointment of the receiver, and that while so employed he acted in the capacity of bookkeeper and clerk, for which service he was to receive $1200, payable monthly, at the end of each and every month; then he sets forth the amount due to him, and there is no dispute about that. The other party is John H. Pringle, who was also an employe of said Brewing Company as a travelling salesman, and who sets forth that there was so much due to him.

Here are three different claims, standing upon three different foundations. The decisions in this state upon the question are both in the 6th Circuit Court Reports. The first case, on page 243, is a decision by the First Circuit: William Lewis v. J. M. Dawson, Assignee of The Cincinnati Chair Company.

"William Lewis, a manufacturer's agent, was employed by The Cincinnati Chair Company to sell its manufactured goods. A contract was entered into between the parties by which the company agreed to pay him twenty dollars per month and five per cent on all the sales made by him."

There is an opinion delivered by Judge Cox in this case sustaining this claim under the statute as being a prior claim for labor, and counsel have conceded upon the argument of this case that this decision goes far enough to include almost anybody who had performed services, and they admit that it would have included the services of an attorney, though I doubt if the legislature would have let it stand if they had so understood it; but the decision goes very far to sustain claims of labor by any person who had performed any kind of service for the failing party within three months; and it does directly and expressly cover the case of Pringle, of that I think there can be no doubt.

On page 351 of this same volume is a decision of the Third Circuit where a claim was made by the Secretary of a Company, and the syllabus is this:

"The secretary of an incorporated manufacturing company is not entitled to the preference over general creditors provided for in sec. 6355 Rev. Stat., and although as such secretary he acted as manager, overseer and superintendet, and in so doing performed manual labor in packing and shipping for the concern, it would not change the rule."

Now, this case is in conflict with the Lewis case—and without stopping to read it, I will say that the opinion of that court is in direct conflict with the holding and the whole line of the opinion of Judge Cox in the First Circuit. If we go outside of the state and go into decisions upon the subject we wander into a trackless swamp where are all sorts of decisions upon all sorts of statutes based upon all sorts of ideas. In some cases a distinction is made as to whether the payments are made monthly, weekly or daily. I do not see any thing in that distinction. I do not see that it makes any difference whether a man is to be paid once a week, once a month or once a day. Distinctions are made as to whether it was manual labor or not; and here is certainly an important distinction, and the general line and scope, of cases in this state and elsewhere and the purpose and object of them, has been undoubtedly, to protect the ordinary laborer; and still it is difficult to see why a person —a bookkeeper for instance—has not performed manual labor in keeping a set of books, under the direction of the manager or proprietor of the concern, although he may use a little headwork. It requires some head work to run a machine, and why a mechanic, standing at his bench, who is required to use as much brains as a man keeping a set of books, and perhaps more, should be permitted to have preference which a bookkeeper is denied, is entirely beyond my com-

prehension, although you may find plenty of cases that support that distinction. The distinction that is made—and which seems to me is important, is the question of supervision—the question whether a person is acting for the principal, whether he is in the place of the principal or stands in any such relation? Take the position of Mr. Bott in this case; he stood there with power to hire and discharge these very men who undoubtedly are entitled to a preference; he was the important man in this brewery, who might make it a success or wreck it, and so far as Mr. Bott is concerned, in my opinion he is not entitled to the preference which is sought to be established here.

So far as Pringle is concerned—a salesman upon the road—I only have this to say: that the decision of the circuit court in Cincinnati is directly in his favor, and it is not within the proper province of this court—there being no decision of the circuit court directly against it, to overrule that decision, and Mr. Pringle's claim will be allowed.

So far as the bookkeeper is concerned, I will allow the claim, although I have great doubt about it, simply upon the principle that I have stated, that he was performing services there under the direction of somebody else, and not as supervisor or vice principal of the concern.

Now that I have decided the case I will allow the parties to put it in such shape as they may think proper and necessary in order that my decision may be sustained or overruled, in some other court.

Exceptions will be noted.